UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**Chambers of**
**Douglas R. Miller**
**United States Magistrate Judge**

101 West Lombard Street
Baltimore, Maryland 21201
MDD_DRMChambers@mdd.uscourts.gov
(410) 962-7770

July 28, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Krysten S. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 24-2943-DRM

Dear Counsel:

On October 10, 2024, Plaintiff Krysten S. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF No. 8) and the parties' briefs (ECF Nos. 11, 13, 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on June 5, 2020, and Child Disability Benefits ("CDB") on June 9, 2020, alleging a disability onset of November 1, 2019. Tr. 14, 393-98. Plaintiff's claims were denied initially and on reconsideration. Tr. 299-305, 313-18. On April 3, 2024, an Administrative Law Judge ("ALJ") held a hearing. Tr. 38-58. Following the hearing, on May 8, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 11-32. The Appeals Council denied Plaintiff's request for review, Tr. 1-3, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

II.   **THE ALJ'S DECISION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on October 10, 2024. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since November 1, 2019, the alleged onset date." Tr. 17. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "status-post gastric bypass, hernia, adhesions, anxiety, depression, post-traumatic stress disorder (PTSD), and bipolar disorder." Tr. 17. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "migraine headaches, QT prolongation, syncope, decreased hearing, thrombocytosis, and gastroesophageal reflux disease (GERD)." Tr. 18. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 18. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ramps and stairs; but can never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, and crouch but can never crawl. The claimant can never be exposed to unprotected heights or moving mechanical parts and cannot have jobs that require exposure to vibration. The claimant is able to perform simple, routine tasks and carry out simple instructions. The claimant cannot perform work requiring a specific production rate, such as assembly line work, or work that requires hourly quotas. The claimant can have jobs in a low stress environment defined as requiring only occasional decisionmaking, and occasional changes in the work setting. The claimant can have occasional interaction with the public, co-workers, and with supervisors.

Tr. 22. The ALJ determined that Plaintiff had no past relevant work but could perform jobs that existed in significant numbers in the national economy. Tr. 30. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 31.

### III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive .

. . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

On appeal, Plaintiff argues that the ALJ failed to provide a proper narrative discussion to support the conclusions in the ALJ's RFC assessment, specifically as to the RFC's production rate provision. ECF No. 11, at 7-14; ECF No. 14, at 2-8. Defendant counters that the ALJ properly accounted for Plaintiff's moderate concentration, persistence, and pace ("CPP") limitations when formulating the RFC and supported the RFC determination with substantial evidence. ECF No. 13, at 5-13.

A claimant's RFC represents "the most [they] can still do despite [their] limitations." 20 C.F.R. § 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.*

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22. However, as *Mascio* explained, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Lori S. v. Kijakazi*, No. BAH-21-2034, 2022 WL 1721192, at *3 (D. Md. May 27, 2022) (quoting *Mascio*, 780 F.3d at 638). An ALJ may accommodate a

claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017). In other words, where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

At step three, the ALJ concluded Plaintiff had a moderate CPP limitation. Tr. 20. The ALJ's RFC assessment states that Plaintiff "is able to perform simple, routine tasks and carry out simple instructions"; "cannot perform work requiring a specific production rate, such as assembly line work, or work that requires hourly quotas"; "can have jobs in a low stress environment defined as requiring only occasional decisionmaking, and occasional changes in the work setting"; and "can have occasional interaction with the public, co-workers, and with supervisors." Tr. 22.

Here, the ALJ found "unpersuasive" the state agency psychological consultants' opinions at the initial level that Plaintiff's "depression, anxiety, ADHD, and neurodevelopmental disorders, result in mild limitations in all domains of mental functioning." Tr. 27. The ALJ noted that the objective medical evidence reflects Plaintiff has "a history of anxiety, depression, mood swings, ADHD, and bipolar disorder that [she] associated with intermittent mood swings, episodic mania, social anxiety, and racing thoughts," and that Plaintiff's mental status exams reveal "that [her] mood was dysthymic, [her] affect was flat, [she] appeared to be somewhat anxious, and that [she] has difficulty with serial seven testing." Tr. 27. The ALJ further observed that Plaintiff "stated that during her prior work attempts as a teacher assistant, she became overwhelmed. She further testified that while she had no history of extreme problems getting along with others, she did not do well in crowds." Tr. 27. The ALJ concluded that:

> [t]hese findings, in combination, warrant a reduction to simple, routine tasks, and carrying out simple instructions; no work requiring a specific production rate, such as assembly line work, or work that requires hourly quotas; jobs in a low stress environment defined as requiring only occasional decisionmaking, and occasional changes in the work setting; and occasional interaction with the public, co-workers, and supervisors.

Tr. 27.

Moreover, at the conclusion of the ALJ's RFC assessment, the ALJ similarly noted the "medical evidence documented throughout the record reflects a history of anxiety, depression, mood swings, ADHD, and bipolar disorder, which [she] associated with intermittent mood swings, episodic mania, social anxiety and racing thoughts," and that Plaintiff's "mental status exams . . . revealed that [her] mood was dysthymic, [her] affect was flat, [she] appeared to be somewhat anxious, and that [she] had difficulty with serial seven testing." Tr. 30. The ALJ observed that Plaintiff "stated that during [her] prior work attempts as a teacher assistant, [she] became overwhelmed[,]" and that Plaintiff "testified that while [she] had no history of extreme problems getting along with others, [she] did not do well in crowds." Tr. 30. The ALJ found that Plaintiff's

"mental status examinations generally reflect normal affect, thought processes, and cognitive functioning" and that "the record only reflects one instance in which [Plaintiff's] concentration was indicated to be poor, which was followed by a mental status examination later that same month, which indicated that [her] cognitive function was within normal limits." Tr. 30. The ALJ concluded that "[t]he findings above, in addition to [Plaintiff's] own reported daily activities, followed by mental status examinations yielding scores of 30 out of 30, and 26 out of 30," supported a "reduction to simple, routine tasks, and carrying out simple instructions; no work requiring a specific production rate, such as assembly line work, or work that requires hourly quotas; jobs in a low stress environment; occasional changes in the work setting; and occasional interaction with the public, co-workers, and supervisors." Tr. 30.

Despite providing evidence to support the moderate CPP limitation, the ALJ failed to explain how the production-rate pace restriction accommodates Plaintiff's CPP limitation. *See Everlena G.*, 2021 WL 3912277 at *3. The ALJ did not provide the necessary discussion for the pace limitation or how this limitation is related to or accommodated by the severe impairments or moderate limitations from which he concluded Plaintiff suffers. While the ALJ concluded that Plaintiff could not perform "work requiring a specific production rate, such as assembly line work, or work that requires hourly quotas," the ALJ did not provide any narrative "bridging" each conclusion with the evidence. *See* Tr. 27, 30; *see Stacy C. v. Kijakazi*, No. CBD-20-2833, 2022 WL 814292, at *4 (D. Md. Mar. 17, 2022) (recognizing that the ALJ only mentioned the pace limitation when "providing her concluding paragraph of her findings."). Each limitation in Plaintiff's RFC requires a narrative discussion describing how the evidence used supports the ALJ's conclusion. SSR 96-8p, 1996 WL 374184, at *7; *see Stacy C.*, 2022 WL 814292, at *4 ("While the ALJ considered the evidence, discussed Plaintiff's complaints and limitations, and pointed out inconsistencies in the record, the ALJ at no point, explained how she concluded that Plaintiff's limitation would be accommodated by the limitation 'work is not performed at a production pace.'").

Further, the ALJ found persuasive the moderate CPP limitations opined by Dr. A. Lewy. Tr. 29. But it is unclear how the ALJ concluded that Plaintiff could not perform work at a production-rate pace despite Dr. Lewy's opinion that Plaintiff's ability to "perform at a consistent pace without an unreasonable number and length of rest periods" is not significantly limited. *See* Tr. 752. As such, the Court finds that the ALJ did not rectify their error when they assigned persuasive value to Dr. Lewy's opinion. *Cf. Sizemore*, 878 F.3d at 80-81 (affirming an ALJ's decision "that provided substantial support" when: (1) the ALJ adopted, without explanation, certain RFC limitations suggested in a medical opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned persuasive value to the opinion). Here, the ALJ failed to explain how the evidence supports the conclusion that Plaintiff could perform simple, routine tasks and carry out simple instructions but could not work at a production rate pace. The Court therefore agrees with Plaintiff that the ALJ erred in assessing this portion of Plaintiff's RFC.

But this conclusion does not end the Court's inquiry. In reviewing SSA decisions, the Court applies a harmless-error standard. *See Patterson*, 846 F.3d at 658. An error is harmless

Krysten S. v. Bisignano
Civil No. 24-2943-DRM
July 28, 2025
Page 6

"when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Kersey v. Astrue*, 614 F. Supp. 2d 679, 696 (W.D. Va. 2009).

Governed by that standard, and having carefully reviewed the entire record, the Court finds that the ALJ's error was inconsequential. Notably, Plaintiff maintains that she is not challenging that a production-rate pace provision fails to comply with *Mascio* or fails to account for a moderate CPP limitation. ECF No. 14, at 2-8. Instead, Plaintiff is only challenging the ALJ's lack of narrative discussion surrounding this provision. *Id.* As Plaintiff acknowledges, this Court has previously held that a restriction from performing at a production rate pace adequately accounts for a claimant's moderate CPP limitation. *See, e.g.*, *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address a moderate CPP limitation); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations); *Lori S.*, 2022 WL 1721192, at *3 (holding that the ALJ accounts for the claimant's moderate CPP limitations when limiting the claimant to "no production rate or pace work[,] [t]hat is no assembly line or high production quota[.]").

Additionally, another district court has held that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016).

For the reasons discussed above, it is unclear how the ALJ determined that a production rate pace limitation was necessary. Nevertheless, the Court cannot conclude that the lack of explanation for this pace limitation amounts to reversible error. To the extent that a pace limitation was necessary at all, the ALJ adopted an RFC provision that was *more* restrictive than anything suggested within the record. Additionally, Plaintiff fails to identify any RFC provisions that the ALJ should have included in lieu of the provision at issue in this case. Plaintiff also fails to explain how a more detailed explanation of either pace or the mental RFC might change the outcome of this case. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency determination."); *Smith v. Colvin*, No. TMD-15-1694, 2016 WL 5147195, at *10 (D. Md. Sept. 20, 2016) (citing *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012)) (finding harmless error where the claimant failed to demonstrate how the result would have changed had the ALJ properly addressed the claimant's cognitive difficulties in the RFC analysis). For these reasons, the Court is unable to conclude that remand for additional analysis might result in a more restrictive RFC assessment or a finding of disability. Thus, the ALJ's error was harmless. *Kersey*, 614 F. Supp. 2d at 696. The Court will therefore affirm the ALJ's decision.

*Krysten S. v. Bisignano*
Civil No. 24-2943-DRM
July 28, 2025
Page 7

**V.      CONCLUSION**

  For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

  Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

           Sincerely,

           /s/

           Douglas R. Miller
           United States Magistrate Judge